UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| ANGELA JUSTUS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-317-HBG |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 19 and 20] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 22 and 23]. Angela Justus ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

**I.    PROCEDURAL HISTORY**

On November 14, 2008, Plaintiff's application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, was granted, and she was found disabled as of June 16, 2003. [Tr. 16]. However, on April 24, 2012, during a subsequent Continuing Disability Review, it was determined that Plaintiff was no longer disabled within the meaning of the Act as of April 1, 2012. [Tr. 16, 105, 140-41]. On May 29, 2013, the decision was upheld on reconsideration. [Tr. 158-68]. Plaintiff then requested a hearing before an ALJ. [Tr. 178-79].

A hearing was held on February 20, 2014. [Tr. 40-74]. On July 3, 2014, the ALJ found that Plaintiff was not disabled. [Tr. 110-20]. The Appeals Council granted Plaintiff's request for review on March 14, 2016, and remanded the decision back to the ALJ for reconsideration. [Tr. 129-31]. A supplemental hearing was held by the ALJ on June 26, 2016. [Tr. 75-97]. On September 23, 2016, the ALJ, again, found that Plaintiff was not disabled. [Tr. 16-30]. The Appeals Council denied Plaintiff's request for review on June 7, 2017 [Tr. 1-3], making the ALJ's second decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on July 24, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated November 14, 2008. This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairments: bipolar syndrome; generalized anxiety disorder, with panic disorder, and; borderline personality disorder. These impairments were found to meet section(s) 12.04A3 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).
>
> 3. Through April 1, 2012, the date the claimant's disability ended, the claimant did not engage in substantial gainful activity (20 CFR 404.1594(f)(1)). The claimant has not engaged in substantial gainful activity since November 14, 2008 (20 CFR 404.1594(f)(1)).
>
> 4. The medical evidence establishes that, as of April 1, 2012, the claimant had the following medically determinable impairments: disorders of the back discogenic and degenerative, other and unspecific arthropathies, affective mood disorders, opioid

dependence, and hepatitis C.

5. Since April 1, 2012, the claimant did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6. Medical improvement occurred as of April 1, 2012 (20 CFR 404.1594(b)(1)).

7. The medical improvement is related to the ability to work because, as of April 1, 2012, the claimant's CPD impairment(s) no longer met or medically equaled the same listings(s) that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i)).

8. As of April 1, 2012, the claimant continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

9. Based on the impairments present as of April 1, 2012, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant: can lift and/or carry (including upward pulling) 20 pounds occasionally and 10 pounds frequently; can stand and/or walk and sit (with normal breaks) six hours out of an eight hour day, each; can push or pull (including hand/foot controls) within the foregoing exertional limitations; can occasionally perform postural activities but cannot climb ladders, ropes, or scaffolds; has no manipulative, visual, communicative, or environmental limitations; is able to understand and remember simple and detailed instructions but cannot make independent decisions at an executive level; is able to maintain attention and concentration for simple and detailed tasks with customary breaks; is able to relate appropriately to peers and supervisors; is unable to interact appropriately with the general public, and; is able to adapt to occasional changes.

10. The claimant has no past relevant work. (20 CFR 404.1565).

11. On April 1, 2012, the claimant was a younger individual age 18-49 (20 CFR 404.1563).

12. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

13. Transferability of job skills is not an issue because the claimant

does not have past relevant work (20 CFR 404.1568).

14. As of April 1, 2012, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present as of April 1, 2012, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

15. The claimant's disability ended as of April 1, 2012 and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8)).

[Tr. 18-30].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. CONTINUING DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's initial application for disability benefits is evaluated pursuant to a five-step analysis in which the claimant bears the burden at the first four steps and the burden shifts to the Commissioner at step five who must prove that there is work available in the national economy that the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant who is found disabled and awarded benefits is thereafter subject to periodic reviews to determine her continued entitlement to benefits. 20 C.F.R. § 404.1594(a); *see Watts v. Comm'r of Soc. Sec.*, 179 F. App'x 290, 292 (6th Cir. 2006) ("[T]here is no presumption of continuing disability.") (citation omitted).

Whether a claimant continues to be disabled is determined pursuant to an eight-step analysis. 20 C.F.R. § 404.1594(f)(1)-(8). Specifically, the Commissioner must determine:

> (1) whether the claimant is performing substantially gainful activity; (2) whether the claimant has an impairment or combination of impairments that meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) whether there has been medical improvement that has decreased the medical severity of the claimant's impairments; (4) whether the medical improvement relates to the ability to work; (5) whether an exception

5

> to medical improvement applies; (6) whether the claimant's impairments in combination are severe; (7) whether the claimant has retained residual functional capacity and can perform past work; and (8) whether the claimant can perform any other substantial gainful activity.

*Delacotera v. Berryhill*, No. 3:16-CV-01464, 2017 WL 971935, at *3 (M.D. Tenn. Mar. 14, 2017) (citing 20 C.F.R. § 404.1594(f)(1)-(8)).

The Commissioner bears the burden at each step, *id.*, and must establish that the claimant is no longer entitled to benefits "because the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling," 42 U.S.C. § 423(f). To meet her burden, the Commissioner must demonstrate that "(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity." § 423(f)(1); *see* 20 C.F.R. § 404.1594(a) ("We must determine if there has been any medical improvement in your impairment(s) and, if so, whether this medical improvement is related to your ability to work."). "If substantial evidence supports both prongs, then the [Commissioner] correctly terminated [the claimant's] benefits." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

## V. ANALYSIS

Plaintiff asserts three allegations of error committed by the ALJ. First, Plaintiff argues that the ALJ failed to properly analyze whether Plaintiff's back impairment met or medically equaled Listing 1.04. [Doc. 20 at 12-15]. Second, Plaintiff maintains that the ALJ failed to properly weigh the opinion of Gordon Holen, D.O., Plaintiff's treating physician. [*Id.* at 16-23]. Lastly, Plaintiff submits that substantial evidence does not support the ALJ's step eight finding that other work exists in significant numbers in the national economy that Plaintiff is capable of performing. [*Id.*

6

at 15-16]. The Court will address each alleged error in turn.

### A. Listing 1.04 – Disorders of the Spine

Plaintiff contends that the medical evidence of record substantiates a finding that she meets or medically equals Listing 1.04, and that "[a]t the very least, the ALJ should have obtained a medical expert to determine if Plaintiff's objective testing results equaled listing 1.04." [*Id.* at 13-15].

A claimant may be found disabled if her impairment meets, or medically equals, one of the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Walters*, 127 F.3d at 529; *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001). The listings "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c). Only when an impairment satisfies all of the listing's criteria will the impairment be found to be of listing level severity. § 404.1525(d).

Evidence of the following is required to meet or equal Listing 1.04:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04.

In the disability determination, the ALJ found that the medical evidence failed to demonstrate that Plaintiff's back impairments were of listing level severity. [Tr. 19]. As to the paragraph A criteria, the ALJ found no evidence of positive straight leg raise testing in the seated *and* supine positions; little evidence of muscle atrophy or weakness; and intermittent evidence of the remaining criteria, which failed to satisfy the durational requirement that an impairment last a continuous period of at least 12 months. [*Id.*]. The ALJ concluded that, at best, the medical evidence demonstrated a pattern of symptoms that waxed and waned over time which was insufficient to satisfy the level of severity required by the listing. [*Id.*] (citing Soc. Sec. Acquiescence Ruling (AR) 15-1(4), 80 Fed. Reg. 57418-02, 2015 WL 5564523, at *57420 (Sept. 23, 2015)). For example, the ALJ cited to instances in the record where Plaintiff's reflexes were normal in July 2013 but described as "brisk" in March 2016, and straight leg raise testing was negative in October 2012, January 2013, and November 2015. [*Id.*] (citing 1069, 1113, 1116, 1202-03, 1209). As to the criteria in the remaining paragraphs, the ALJ found that the record lacked (1) "evidence of spinal arachnoiditis[] by way of an operative report of pathology report" as required by paragraph B and (2) "evidence that the claimant requires an assistive device to ambulate" as required by paragraph C. [Tr. 20].

8

The Court finds that substantial evidence supports the ALJ's assessment of Listing 1.04 because the medical evidence does not confirm the existence of the listing's requisite criteria. Generally citing to various imaging studies conducted between 2008 and 2013, Plaintiff counters that she satisfies the listing. [Doc. 20 at 14] (citing Tr. 924, 1116, 1124, 1128, 1130, 1240, 1242, 1250). She does not precisely explain, however, the relevance of the imagining studies in so far as which study meets or medically equals which paragraph criteria. *See Slaughter v. Comm'r of Soc. Sec.*, No. 1:15-CV-15, 2016 WL 1165402, at *4 (W.D. Mich. Mar. 25, 2016) ("While plaintiff cites records from two doctor visits in April and May 2013, he does not explain how these records meet the listing requirements.").

Regardless, the listing requires more than imaging abnormalities. As found by the ALJ with regard to paragraph A, Plaintiff has not demonstrated "neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)" for a *continuous* period of at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04A. Plaintiff merely cites one instance in which she was positive for straight leg raise testing (without reference to whether testing was positive in the sitting and supine position), few instances of pain distribution and limited range of motion, and no instances of motor loss. [*See* Doc. 20 at 14] (citing Tr. 1125, 1132). The ALJ properly found that intermittent evidence of the requisite criteria failed to satisfy paragraph A:

> [W]hen the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A. An individual who shows only some of the criteria on examination presents a different, less severe

9

> clinical picture than someone with the full set of criteria present simultaneously. To meet the severity required by the listing, our policy requires the simultaneous presence of all of the medical criteria in listing 1.04A.

AR 15-1(4), 2015 WL 5564523 at *57420. Plaintiff's general citation to imaging studies, coupled with few positive examination findings, fails to demonstrate that she meets or equals paragraph A.

Likewise, Plaintiff has not presented compelling evidence that she satisfies the criteria of paragraphs B or C. As to paragraph B, the ALJ found, and Plaintiff has not demonstrated otherwise, that the medical records lack any indication of spinal arachnoiditis confirmed by an operative note, pathology report, or other appropriate medically acceptable imaging. Similarly, Plaintiff has not offered any evidence that contradicts the ALJ's paragraph C finding that Plaintiff did not require an assistive device to ambulate due to an inability to ambulate effectively.[1] Accordingly, the Court finds that Plaintiff has not set forth sufficient medical proof that she satisfies paragraphs B or C. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. It is insufficient that a claimant comes close to meeting the requirements of a listed impairment") (citations omitted).

The Court also finds that the ALJ was not required to obtain a medical expert to determine if Plaintiff equaled Listing 1.04. "Social Security regulations permit, but do not require, an ALJ to 'ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment(s),' and whether they equal the requirements of a listed impairment." *Lance v. Astrue*,

---

[1] "Inability to ambulate effectively means an extreme limitation of the ability to walk . . . . Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B2b.

No. 3:07-CV-411, 2008 WL 3200718, at *4 (E.D. Tenn. Aug. 5, 2008) (quoting 20 C.F.R. § 416.927(f)(2)(iii)). An ALJ need only obtain a medical expert opinion when the ALJ believes "the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable." Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *3-4. Here, the ALJ made no such finding, and substantial evidence supports the ALJ's analysis of the medical evidence in concluding that Plaintiff neither met nor equaled Listing 1.04.

Therefore, the Court finds Plaintiff's allegation of error in this regard to be without merit.

### B.     Treating Physician Gordon Holen, D.O.

Plaintiff's second allegation of error is that the ALJ failed to give appropriate weight to her treating physician, Dr. Holen, in accordance with the 20 C.F.R. § 404.1527(c). [Doc. 20 at 16-23].

The record indicates that Dr. Holen began treating Plaintiff on June 27, 2013, when Plaintiff presented for a second opinion regarding her back pain. [Tr. 25, 1071-72]. Dr. Holen continued to treat Plaintiff for complaints of back, shoulder, hip, and knee pain through March 29, 2016. [Tr. 1065-1101, 1202-50]. Treatment notes reflect Plaintiff's subjective complaints of pain, objective examination findings, results of imaging studies and other procedures performed, as well as treatment recommendations. [*Id.*]. Among the findings noted in assessing Plaintiff's pain, Dr. Holen made the following statements: (1) on June 27, 2013, during Plaintiff's initial appointment, Dr. Holen stated that Plaintiff "has had persistent and very disabling back pain" [Tr. 1071]; (2) on October 8, 2013, Dr. Holen remarked that Plaintiff "is to the point where she wants to proceed with definitive treatment for her back, it is quite disabling" [Tr. 1067]; and (3) on December 10, 2013, two weeks post-operative from L4-5 lateral lumbar interbody fusion with percutaneous screw fixation, Dr. Holen stated that Plaintiff "is going to continue to try to uphold her lifting

11

restrictions . . . ." [Tr. 1065].

In assessing the "opinion evidence" of record, the ALJ addressed the three statements made by Dr. Holen and assigned them "little weight" for several reasons. [Tr. 26-27]. First, the ALJ found the opinions were vague because Dr. Holen did "not define what he meant by 'disabling' and it is unclear what his understanding of the term is," and he similarly failed to explain Plaintiff's "lifting restrictions, the reason for such restrictions, or the duration for which such restrictions would be expected to endure." [Tr. 27]. Second, the ALJ reasoned that whether an impairment is "disabling" is an issue reserved for the Commissioner's determination. [*Id.*]. Finally, the ALJ discounted the opinions because, as previously noted in the ALJ's discussion of the medical evidence [Tr. 25-26], Plaintiff "underwent surgery [with Dr. Holen] to address her back pain in November 2013 and was noted to be doing 'well' thereafter." [*Id.*].

Plaintiff argues that the medical evidence of record supports a finding that Dr. Holen's "disabling" opinions were entitled to controlling weight because Dr. Holen's treatment notes, which Plaintiff claims were ignored by the ALJ, support Dr. Holen's "characterization of the Plaintiff's impairments as 'disabling.'" [Doc. 20 at 17-21].

Under the Social Security Act and its implementing regulations, if a medical opinion by a treating physician is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." § 404.1527(a)(2). When a medical opinion does not garner controlling weight, the ALJ must

"consider" the following factors in determining the appropriate weight: the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 404.1527(c)(1)-(6). The ALJ must always give "good reasons" for the weight given to a treating source's opinion in the disability determination. § 404.1527(c)(2).

However, opinions on issues reserved to the Commissioner, such as whether a claimant is "disabled," are not considered medical opinions "because they are administrative findings that are dispositive of a case." § 404.1527(d)(1). Thus, opinions on issues reserved to the Commissioner, regardless of the opinion's source, "will not be given any special significance. . . ." *Id.*; *see* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). Nonetheless, such opinions cannot be ignored, and the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." Soc. Sec. Ruling 96-5p, 1996 WL 374183 at *3. The § 404.1527(c) factors noted above must still be considered in evaluating opinions on issues reserved to the Commissioner. *Id.*

As an initial matter, the Court finds Dr. Holen's opinions that Plaintiff's back impairment was "disabling" are opinions on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). Therefore, the ALJ properly declined to give the opinions controlling weight. Nonetheless, the ALJ was required, and did, consider the opinions along with Dr. Holen's lifting restriction. The Court finds the ALJ properly evaluated the evidence of record to determine the supportability of Dr. Holen's opinions. In this regard, the Court observes that prior to addressing Dr. Holen's opinions, the ALJ provided a detailed discussion of the medical evidence pertaining

13

to Plaintiff's physical impairments, including the nature of Plaintiff's treatment and Dr. Holen's three year treating relationship with Plaintiff, in explaining why the medical evidence failed to substantiate Plaintiff's allegations that her impairments were as severe as she alleged. [Tr. 24-26]. The ALJ's discussion demonstrates that Plaintiff responded favorably to treatment over time such that her back pain and symptoms became intermittent. [*Id.*]. Furthermore, the ALJ considered Plaintiff's daily living activities and other medical opinions of record in demonstrating that Plaintiff was capable of performing a reduced range of light work. [Tr. 24, 27].

Based on the ALJ's discussion of the medical evidence, and in particular Dr. Holen's treatment notes, the Court finds that the ALJ reasonably concluded that it was unclear what Dr. Holen meant when he characterized Plaintiff's back pain as "disabling", given her response to treatment, and in particular her lateral lumbar interbody fusion in which Plaintiff was noted to be doing "well" following her surgery. Likewise, the ALJ reasonably found that Dr. Holen's lifting restrictions were similarly unclear as he offered no explanation or support for the restrictions and did not define what the restrictions were, in functional terms. The ALJ further, and properly, found that regardless of Dr. Holen concluding that Plaintiff's back pain was disabling, a finding of disability is reserved for the Commissioner's determination. The Court finds that these reasons amount to good reasons for the assignment of little weight to Dr. Holen's opinions.

Plaintiff contends, however, that because the ALJ found Dr. Holen's opinions "unclear" and "vague," the ALJ had a duty to develop the record further by recontacting Dr. Holen. [Doc. 20 at 22-23]. Social Security Ruling 96-5p states, "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." 1996 WL 374183 at *6.

The Court finds that the second prong triggering the ALJ's duty to recontact Dr. Holen is not present in this case.

In reaching this conclusion, the Court observes that while the ALJ was uncertain what Dr. Holen's understanding of the term "disabling" was, the ALJ rejected the opinions not because he could not ascertain the bases of the opinion but because the opinions were not supported by Dr. Holen's treatment notes. To be sure, the ALJ observed that at the time Dr. Holen opined that Plaintiff's back impairment was "disabling," Dr. Holen had diagnosed Plaintiff with severe L4-L5 degenerative spondylosis with interbody collapse and examination findings revealed "moderate lumbar paraspinal spasming, moderately decreased flexion and extension, and pain with straight leg raise testing." [Tr. 25, 1067-69]. The ALJ went on to discuss Dr. Holen's treatment of Plaintiff in detail, including further imaging studies and examination findings [Tr. 25-26]. The ALJ also observed, however, that Plaintiff did "well" following her lateral lumbar interbody fusion and "was 'completely neurologically intact from L2 through S1 and had full muscle strength." [Tr. 25-26, 1065, 1227]. Furthermore, the ALJ acknowledged that although Plaintiff's back pain did not cease, her pain did became intermittent as confirmed by a March 2016 treatment note by Dr. Holen, as well as by Plaintiff's testimony. [Tr. 26, 84, 1202]. Thus, the ALJ's discussion of the medical evidence demonstrates that the ALJ understood the bases of Dr. Holen's opinions—that is, severe L4-L5 degenerative spondylosis with interbody collapse. The ALJ also relied on Dr. Holen's treatment notes in concluding that Plaintiff had severe impairments of the back. However, the ALJ found the same evidence insufficient to support a finding that Plaintiff was disabled or more limited in her ability to lift and carry than accounted for by her RFC. Therefore, the ALJ found Dr. Holen's opinions unpersuasive, not because he could not ascertain the bases for the opinions, but because they were not supported by his treatment notes nor were they supported by the other

15

medical and non-medical evidence of record.

Accordingly, the Court finds Plaintiff's second allegation of error is not well taken.

C.     Step Eight – Other Work

Plaintiff argues that substantial evidence does not support the ALJ's step eight finding that a significant number of jobs exist in the national economy that Plaintiff can perform, because the ALJ's written decision fails to quantify the number of jobs available. [Doc. 20 at 15-16].

During the administrative hearing, the ALJ asked a vocational expert ("VE") whether work existed in the national economy for a hypothetical individual with the same age, vocational factors, and RFC as Plaintiff. [Tr. 92-93]. The VE testified that there was work that existed in the national economy the individual could perform, including 225,000 jobs as a marker, retail (Dictionary of Occupation Titles ("DOT") #209.567-039); 232,800 jobs as a laundry folder (DOT #396.607.-018); and 134,200 jobs as a sorter (DOT # 753.587-010). [Tr. 93]. In the disability determination, the ALJ relied on the VE's testimony to conclude that given Plaintiff's RFC and other vocational factors, she "was capable of making a successful adjustment to work that existed in significant numbers in the national economy." [Tr. 29-30]. The ALJ identified the specific job titles, as while as their corresponding DOT number, in summarizing the VE's testimony as to the representative occupations that remained available and suitable for Plaintiff to perform. [*Id.*].

The Commissioner has the burden of proving "that the claimant retains the residual functional capacity to perform 'substantial gainful work which exists in the national economy.'" *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)). "[W]ork which exists in the national economy" is defined as "work which exists in significant numbers either in the region where [plaintiff] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). "Work exists in the national

16

economy when there is a significant number of jobs (in one or more occupations) having requirements which [plaintiff is] able to meet with [plaintiff's] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). There is no "magic number" for what constitutes a "significant number", but many different factors may appropriately be considered in making the determination, including "the reliability of the vocational expert's testimony." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)

Because the ALJ's written decision does not quantify the number of jobs available in the national economy for the representative occupations identified by the VE, Plaintiff asserts that the Commissioner cannot meet her step eight burden. [Doc. 16 at 20]. The Court is unpersuaded. While it may have been more prudent for the ALJ to include the exact number of jobs available in his written decision, the oversight is not fatal to the ALJ's decision where the VE testified to the number of jobs available and such testimony has been made part of the record. [Tr. 93]. Plaintiff does not dispute that the number of jobs identified by the VE—225,000 marker, retail jobs, 232,800 laundry folder jobs, and 134,200 sorter jobs—constitutes a "significant number." And the Court concludes that these numbers are indeed significant. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'") (collecting cases). Thus, to the extent that the ALJ erred, the Court finds the error harmless and that remanding the case for the ALJ to simply repeat those numbers in his written decision would serve no useful purpose. *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 463 (6th Cir. 2005) ("[W]e continue to believe that [w]hen remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game.") (internal quotations omitted); *Wilson*, 378 F.3d at 546-47 (an ALJ's violation of the Social Security Administration's procedural rules is harmless and will not

result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses.").

The Court, therefore, finds Plaintiff's third allegation of error to be without merit.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 19**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

*Bruce Guyton*
United States Magistrate Judge